UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-61753-CIV-HUCK/O'SULLIVAN

VITAL PHARMACEUTICALS, INC.,
a Florida Corporation,

    Plaintiff,

vs.

CYTOSPORT, INC., a California
Corporation,

    Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

    THIS MATTER is before the Court upon the Defendant's Motion to Dismiss or Alternatively Transfer Venue filed on December 23, 2009 [D.E. # 8]. The Court has reviewed the Defendant's Motion, the Plaintiff's opposition thereto, the Defendant's reply in support thereof, and other pertinent portions of the record. Being otherwise duly advised in the premises, the Court hereby GRANTS Defendant's Motion to Dismiss for the reasons stated below.

I. **BACKGROUND**

    This is an action for declaratory judgment filed by Vital Pharmaceuticals, Inc. ("Vital") against CytoSport, Inc. ("Cyto"). Plaintiff Vital, a Florida corporation, has a U.S. trademark application for "MUSCLE POWER" and is launching a product called "Muscle Power." Defendant Cyto, a California corporation, is the owner of a registered trademark for "MUSCLE MILK" and makes a product called "Muscle Milk." Both Vital's Muscle Power and Cyto's Muscle Milk products are ready-to-drink liquid protein drinks sold as nutritional supplements. Vital's Muscle Power drink will compete directly with Cyto's Muscle Milk drink. Cyto's product was trademarked and being sold in the market first. On October 30, 2008, after multiple communications between the parties regarding trademark infringement concerns, including Vital's receipt of a cease and desist letter from Cyto, Vital filed this action seeking a declaratory judgment. Vital seeks a judicial

declaration that its intended use of the Muscle Power trademark does not infringe on the trademark or trade dress of Cyto's "Muscle Milk" product.  On November 4, 2008, subsequent to the filing of this action, Cyto filed an action in the Eastern District of California, Case No. 08-cv-02632-FCD-GGH, alleging trademark infringement and related claims.  Cyto now moves for dismissal of this case based on 12(b)(3),[1] improper venue, or, in the alternative, a transfer of venue under 28 U.S.C. § 1404(a), to the Eastern District of California.

Cyto, holder of the Muscle Milk trademark, says it first learned of Vital's initial trademark application for the mark "MUSCLE SHAKE"[2] in mid-July, 2008.  On July 28, 2008, Cyto sent Vital a letter inquiring about Vital's Muscle Shake trademark application and requesting further information about any products it intended to market under that mark.  Cyto states that a few weeks later, around August 15, 2008, counsel for Cyto and Vital spoke regarding Vital's plans to launch a product with the name "Power Milk."  Cyto later learned that the product was going to be called "Muscle Power."  Cyto now has a pending trademark application for the Muscle Power mark. Vital confirms that around September, 25, 2008, counsel for both parties spoke regarding the July 28th letter.  Both parties attended a trade show from September 25-2008, where Vital advertised its Muscle Power product and Vital was again made aware of Cyto's concerns regarding the product's trademark and trade dress.  From October 4-7, 2008, the parties attended another trade show, where employees from both companies spoke to each other.  Cyto's employee inquired as to Vital's plans for the product and timing of sending it to market.  Vital's counsel also left a phone message for Cyto's counsel on October 10, 2008, but did not actually speak to Cyto's counsel.

On October 16, 2008, Cyto sent Vital counsel a cease and desist letter.  The letter indicated that Cyto was "very concerned with the trade dress [Vital has] chosen for use in connection with [Vital's] MUSCLE POWER product, as well as [Vital's] use of the term MUSCLE POWER for a product which directly competes with goods bearing the MUSCLE MILK mark."  The letter further requested that Vital "immediately cease and desist any marketing, promoting, selling or offering for

---

[1] The opening sentence of Defendant's Motion to Dismiss also purports to be moving to dismiss based on 12(b)(2), lack of personal jurisdiction, but there is no further argument supporting that initial statement about lack of personal jurisdiction over the Defendant.  Because the Court finds that dismissal is warranted under Fed. R. Civ. P. 12(b)(3), the Defendant's otherwise unaddressed allegation of lack of personal jurisdiction is not discussed herein.

[2] Cyto believes that Vital considered at least three names for its protein drink, Muscle Shake was the first one brought to the attention of Cyto, although Vital in the end decided to use "Muscle Power," the mark that is the subject of this declaratory action.

sale any and all products that infringe any CytoSport trade dress and trademarks, including without limitation, [Vital's] MUSCLE POWER products." Cyto then wrote that it would like to "continue our discussion related to [Vital's] MUSCLE SHAKE mark," and invited Vital to contact Cyto at Vital's earliest convenience to discuss Cyto's concerns in more detail. Vital received the letter on October 20, 2009.

Vital filed this suit for declaratory judgment ten days later, on October 30, 2008. The parties agree that they had no other communication between the date of the cease and desist letter and the date of the filing of this action. Five days after that, on November 4, 2008, Cyto filed its complaint in the Eastern District of California. Cyto acknowledges that it learned of this action "on the same day it filed its complaint in California," but does not specify if it was aware of the Florida action prior to the actual filing. Cyto was not served with the Florida complaint prior to filing its California complaint. On November 5, 2008, Cyto sent Vital a letter enclosing a copy of that complaint and asking Vital to accept service. Cyto did not receive an immediate response and, on November 7, 2008, sent a process server to Vital's headquarters in Florida. According to Cyto, the process server entered Vital's headquarters but was asked to wait outside the building. When the process server went outside, he was not allowed to reenter or serve the complaint. On the same date, Vital sent Cyto a letter stating that it had become aware of the California action, but that Cyto should be aware that the issues raised in that complaint were the subject of an earlier filed declaratory judgment action in Florida. On November 10, 2008, Vital mailed a copy of the Florida complaint to Cyto and asked Cyto to withdraw the California action because the Florida action was filed first. Cyto also claims that its process server returned to Vital's headquarters on November 10, 2008 and was again denied access and was unable to serve the complaint. On November 12, 2008, Vital's counsel accepted service of the California complaint.

## II. DISCUSSION

### A. First-Filed Rule

The action pending in this Court is the first-filed action. Generally, federal courts follow the "first-filed rule" when there are two actions involving overlapping issues and parties pending in two different federal courts. *See Manuel v. Convergys Corp.,* 430 F.3d 1132, 1135 (11th Cir. 2005); *Merrill Lynch, Pierce, Fenner & Smith v. Haydu,* 675 F.2d 1169, 1174 (11th Cir. 1982). The first-filed rule provides a strong presumption in favor of the forum of the first-filed suit. *Merrill Lynch*,

675 F. 2d. at 1174. The purposes of the rule are to conserve judicial resources and avoid conflicting rulings. *Supreme Int'l Corp. v. Anheuser-Busch, Inc.*, 972 F. Supp. 604, 606 (S.D. Fla. 1997). However, the first-filed rule is not meant to be followed mechanically and a district court has discretion to dispense with the first-filed rule when there are "compelling circumstances" that indicate that justice would be better served by allowing the second filed case to proceed. *Merrill Lynch*, 675 F. 2d. at 1174. The burden to establish that compelling circumstances exist is on Cyto, the party seeking the dismissal or transfer. *Manuel*, 430 F.3d at 1135. Courts deviate from the first-filed rule "when the balance of convenience tips in favor of the second forum or there are special circumstances which justify giving priority to the second action." *Philibert v. Ethicon, Inc.*, 2005 WL 525330, *1 (S.D. Fla. 2005). The factors applied in determining whether to follow the first-filed rule are often the same factors that apply to the determination of whether transfer is appropriate under § 1404. *Manuel*, 430 F. 3d. at 1135 n.1. The § 1404 factors are discussed in more detail below in section Part II, B, but generally include a consideration of the convenience of the parties and the connection of the forum to the controversy in determining whether to hear the case.[3] *Id.* at 1137. Those factors are non-exclusive in the context of a motion to dismiss and courts look at all equitable factor to determine whether a first-filed action should be dismissed. *Id.* Specifically with respect to declaratory judgment actions, the Eleventh Circuit has found that a dismissal of a first-filed declaratory judgment action is warranted when that action was filed in anticipation of "imminent" judicial proceedings. *Ven-Fuel, Inc. v. Department of Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982). However, it is also important to note that even where compelling circumstances are present, a court is not required to abandon the first-filed rule. The matter remains one of discretion for the trial court. *See, e.g., Philbert*, 2005 WL 525330 at *1.

B. **Factors evaluated in dismissing this action**

The Defendant raises five arguments in support of its Motion to Dismiss or Transfer. The Defendant argues that compelling circumstances warrant dismissal or transfer of the case because: (1) the Plaintiff filed this case in anticipation of suit in another forum, (2) the Plaintiff has acted in bad faith by delaying service of its complaint and evading service of the Defendant's complaint, (3)

---

[3] The Defendant urges adoption of a nine-factor list from *Ameritas Variable Life Ins. Co.*, 411 F. 3d 1328, 1331 (11th Cir. 2005), however, those factors are not directly applicable here because that case addresses federal courts deferring to pending *state court* proceedings, not other federal courts, which is evident from both the facts of the case and the wording of the factors. To the extent those factors coincide with the relevant equitable determination of whether to dismiss or transfer a case to another federal court, they are considered implicitly herein.

the California action can provide a more comprehensive resolution of the issues, (4) it is in the interest of judicial economy to allow the California court to hear this action and (5) under the § 1404 factors, it is more convenient to the parties and witnesses to have this case heard in California. After reviewing the facts in this case, the Court finds that Cyto has met its burden of showing compelling circumstances warranting dismissal in this case. The Court finds that compelling circumstances exist here because this action was filed in anticipation of another imminent proceeding, and that this case should therefore be dismissed so that the California case may proceed.

As noted above, a district court may decline to entertain a declaratory judgment action when the action was filed in anticipation of another imminent proceeding. *Ven-Fuel*, 673 F.2d at 1195, *see also Amerada Petroleum Corp. v. Marshall,* 381 F.2d 661, 663 (5th Cir. 1967) (noting that filing a declaratory judgment action in anticipation of suit in another forum "is an equitable consideration which the district court was entitled to take into account"). Here, the parties had multiple and continuing discussions over possible trademark infringements. Vital had received a cease and desist letter which indicated the imminency of a suit if Vital did not discontinue its use of the Muscle Power trademark, as well as an invitation to continue discussing its planned use of the Muscle Shake trademark. Rather than respond to the cease and desist letter and continue discussions in an attempt to resolve the matter, Vital filed this action. Determining whether other proceedings are "imminent" in this case requires looking at the entire course of communication of the parties and the status of the communications at the time of filing. This lawsuit was not filed in a vacuum. It is clear from reviewing the prior course of communications that the parties were in communication in an attempt to amicably resolve their dispute over allegations of trademark infringement. The parties spoke various times and exchanged written communications that indicated the extremely high likelihood of suit if a resolution was not reached. Vital knew that a Cyto was aggressive in protecting its trademark and filed suit in anticipation of Cyto's suit for trademark infringement. The cease and desist letter, particularly when viewed in light of the parties' prior course of communication, demonstrates the imminency of the other law suit. To find otherwise would discourage parties from attempting to amicably settle disputes and, rather, would result in rewarding the winner in a race to the courthouse.

The Defendant further argues that Plaintiff Vital acted in bad faith by delaying service of its Florida complaint, as well as evading service of the California action. Vital responds that it did not

delay service in bad faith, but rather had a clerical error in the summons. The Court does not need to determine whether Vital actually delayed service of its own complaint or evaded service of the California complaint, but notes that if those allegations were true, a Court is weighing equitable factors may consider the behavior of the parties with respect to the legal process. While this issue would not justify dismissal, actions that appear to be taken in bad faith, like not allowing process servers entry while engaging in a race to the courthouse, reflect poorly on the party engaged in those activities and speak to the parties' good faith dealing with the judicial system.

The next equitable factor raised by the Defendant is that the California action can provide a more comprehensive resolution of underlying legal and factual issue. Vital responds that this case will determine the same fundamental issue as the California case, i.e., whether Vital's use of "Muscle Power" as a trademark, and its product dress, infringes on Cyto's rights. With respect to Vital's California state law claims, Vital states that since all these claims are based on the same underlying facts, those are compulsory counterclaims in the instant action and can therefore be fully addressed here. Thus, this factor does not weigh in favor of either party.

Defendant also argues that judicial economy points towards having the case heard in California, where its headquarters are located because it has the burden of proving an infringement on its trademark, while Plaintiff need only disprove that. The court in *Anheuser-Busch*, a similar trademark infringement case, also examined judicial economy and found that where each case was filed in the federal court that sat in the district where the respective companies' headquarters were located, there was not a strong argument in favor of judicial economy either way. *Anheuser-Busch*, 972 F. Supp. at 607-08. Similarly, here the Court finds that this factor does not weigh in favor of either party.

Last, courts look at convenience as an equitable factor in determining whether to dismiss a first-filed case pursuant to Fed. R. Civ. P. 12(e). Convenience is also the guiding force in a determination to transfer a case under 28 U.S.C. § 1404. In evaluating a proposed transfer under § 1404, courts consider: (1) plaintiff's initial choice of forum, (2) convenience of the parties and witnesses, (3) relative ease of access to sources of proof, (4) availability of compulsory process for witnesses, (5) location of relative documents, (6) financial ability to bear the cost of the change, and (7) all other practical problems that make trial of the case easy, expeditious and inexpensive. *Manuel*, 430 F. 3d. at 1135 n.1. In weighing those factors, the Eleventh Circuit has articulated a policy of

being restrictive in transferring actions, stating that "the plaintiff's choice of forum should not be disturbed unless the movant can show that it is clearly outweighed by other considerations." *American Aircraft Sales Intern., Inc. v. Airwarsaw, Inc.*, 55 F.Supp.2d 1347, 1351 (M.D.Fla. 1999) (quoting *Howell v. Tanner,* 650 F.2d 610, 616 (5th Cir. Unit B 1981).

The first factor would appear to weigh in favor of retaining the case, as it is the Plaintiff's initial choice of forum. However, Cyto argues that Vital is not the "natural plaintiff" because this is a declaratory judgment and therefore its chosen forum does not need to be respected. The other factors don't appear to weigh overwhelmingly towards either party. Cyto argues that its witnesses are located in California. Cyto will rely upon testimony from its president and vice-president, as well as numerous non-party witnesses (e.g., vendors and distributors) to establish the "fame and strength" of its trademark. Cyto argues that because it carries the burden of proof in this dispute, it will present more witnesses and evidence than Vital; Vital only needs to defend its position. Vital counters that it brought suit in Florida because this disagreement is based on Vital's conduct, i.e., its use of the Muscle Power trademark and trade dress, and that the majority of witnesses and documents are located here. At this stage, it appears that the parties will be equally inconvenienced. Both parties will likely call witnesses from their own companies and industry experts. The other factors also don't appear to favor one party or the other.

III. **CONCLUSION**

Upon consideration of the equitable factors regarding dismissal of a case under Fed. R. Civ. P. 12(b)(3), including the course of communication between the parties and the status of their discussions at the time of the filing of this case, the Court finds this case was filed in anticipation of imminent legal proceedings and it is in the interest of justice to dismiss this case so that the California action may proceed. It is hereby

ORDERED that the Defendant's Motion to Dismiss is GRANTED and this case is DISMISSED WITHOUT PREJUDICE. All pending motions are DENIED as moot and the case is CLOSED.

DONE in Chambers, Miami, Florida, this February 9, 2009.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
Counsel of Record